UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
SHARYL THOMPSON ATTKISSON, et al.,    )
                                      )
            Plaintiffs,               )
                                      )
       v.                             )   Civ. Action No. 15-238 (EGS)
                                      )
ERIC HOLDER, et al.,                  )
                                      )
            Defendants.               )
_____)

## MEMORANDUM OPINION

Sharyl Attkisson is an investigative reporter who lives in Leesburg, Virginia, along with her husband, James Attkisson, and their daughter, Sarah Attkisson. *See* First Am. Compl., ECF No. 30 ¶¶ 4-6. They bring this action against former Attorney General Eric Holder; former Postmaster General Patrick Donahoe; and unknown agents of the Department of Justice, the United States Postal Service, and the United States. Plaintiffs allege violations of rights guaranteed to them by the United States Constitution and bring this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Pending before the Court is the plaintiffs' motion for leave to conduct expedited discovery. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the Court **DENIES** plaintiffs' motion.

## I. Background

### A. Factual Background[1]

From 2011 to 2013, Ms. Attkisson prepared numerous high-profile stories for CBS News on subjects including the "Fast and Furious" incident and the 2012 attack on the United States compound in Benghazi, Libya. *See* First Am. Compl., ECF No. 30 ¶ 4. Plaintiffs allege that in mid-2011, they "began to notice anomalies in numerous electronic devices" in their home, including a laptop and desktop computer "turning on and off at night," the home security system "chirping daily at different times," phone trouble, and television interference. *Id.* ¶ 22. In January 2012, plaintiffs' internet service "began constantly dropping off." *Id.* ¶ 24. In October 2012, the plaintiffs experienced increased interference with home and mobile phone lines, computers, and their television. *Id.* ¶ 36. By November 2012, plaintiffs claim that their phone lines "became nearly unusable because of . . . regular interruptions and interference, making telephone communications unreliable, and, at times, virtually impossible." *Id.* ¶ 39.

Ms. Attkisson contacted Verizon, her service provider, numerous times between January 2012 and January 2013 to try to

---

[1] The factual background recited herein is taken from the allegations of plaintiffs' Complaint which, for purposes of this motion, the Court assumes are true.

remedy these issues. *Id.* ¶¶ 24, 43. In January 2012, Verizon replaced plaintiffs' router, which did not resolve the issue. *Id.* ¶ 24. Verizon sent a representative in March 2012 to replace the router again; this still did not resolve the issue. *Id.* ¶ 28. In December 2012, a "contact [of Ms. Attkisson's] with U.S. government intelligence experience" discovered an extra fiber optic cable on the exterior of her Verizon cable box. *See id.* ¶ 42. Ms. Attkisson contacted Verizon about this extra cable on December 31, 2012; although Verizon denied installing it, they dispatched a technician the next day to remove it. *Id.* ¶¶ 42-43. Ms. Attkisson requested that the technician leave the cable at her house, but when she returned home, the cable was not there and she could not reach the Verizon technician at the phone number he had provided. *Id.* ¶¶ 43-44. Verizon subsequently made several follow-up visits in January and February of 2013. *Id.* ¶ 45.

Ms. Attkisson also alleges that starting as early as June 2011, "an unauthorized party or parties remotely installed sophisticated surveillance spyware" on her computer. *Id.* ¶ 26. Though "unknown to Ms. Attkisson at the time," these intrusions were revealed by later computer analyses. *Id.* Ms. Attkisson asserts that unknown parties were able to "transfer[] large numbers of records off [her] BlackBerry," access her entire family's "e-mails, personal files, Internet browsing, passwords,

3

execution of programs, financial records, [and] photographs." *Id.* Later analysis also allegedly indicated that in July 2012, "intruders remotely 'refreshed' the ongoing surveillance of Ms. Attkisson's" computers. *Id.* ¶ 31. This also revealed that in December 2012, intruders had remotely removed evidence of their intrusion from Ms. Attkisson's computers. *See id.* ¶ 41. Finally, the analysis identified "an unauthorized communications channel" on Ms. Attkisson's laptop linked to an internet protocol (IP) address associated with the U.S. Postal Service. *See id.* ¶ 61.

Ms. Attkisson contacted a computer forensics expert on January 8, 2013 to analyze her laptop. *Id.* ¶ 46. This individual found "evidence of outside and unauthorized 'intrusion' . . . [which was] state-supported due to the sophisticated nature of the technology used." *Id.* The report further indicated that the intrusion likely lasted most of 2012 and allowed intruders to gain access to CBS network systems, which led Ms. Attkisson to notify her supervisor at CBS of the intrusions on her work laptop. *Id.* On February 2, 2013, an independent forensic computer analyst hired by CBS reported that he had found evidence of a "coordinated, highly-skilled series of actions and attacks" on Ms. Attkisson's laptop and desktop computers. *Id.* ¶ 47.

Ms. Attkisson filed a complaint with the Department of Justice's Inspector General, which informed her that the FBI

4

denied having "any knowledge of any operations concerning Ms. Attkisson's computers or phone lines." *Id.* ¶¶ 49, 51. CBS subsequently hired an additional cyber security firm, which "confirmed that there was a highly sophisticated intrusion into Ms. Attkisson's computer, as well as remote actions taken in December, 2012, to delete all evidence of that intrusion." *Id.* ¶ 53.

The FBI began a separate inquiry in June 2013. *Id.* ¶ 57. In January 2014, Ms. Attkisson released her desktop computer to the DOJ Inspector General for investigation. *Id.* ¶ 59. The DOJ Inspector General initially did not release a written report and did not respond to Ms. Attkisson's FOIA request, although the Inspector General released a partial report prior to Ms. Attkisson's testimony to a Senate panel in early 2015. *See id.* This report found no evidence of intrusion into Ms. Attkisson's desktop computer, but did note that there was "advanced mode computer activity" present on the computer. *Id.*

### B. Procedural History

On December 30, 2014, plaintiffs filed suit in the Superior Court of the District of Columbia against then-Attorney General Eric Holder, Postmaster General Patrick Donahoe, and unknown agents of the Department of Justice, the United States Postal Service, and the United States as "Doe" defendants, all in their individual capacities. Mr. Holder and Mr. Donahoe appeared

5

specially on February 18, 2015 to remove the case to this Court. *See* Notice of Removal, ECF No. 1.

On February 23, 2015, Ms. Attkisson filed her first motion for expedited discovery. *See* First Mot. for Expedited Disc., ECF No. 5. Mr. Holder and Mr. Donahoe appeared specially to oppose this motion. *See* Opp. to First Mot. for Expedited Disc., ECF No. 11. The Court reviewed these pleadings and determined that "there is some ambiguity as to whether and when the named defendants in this case were served." Minute Order of March 13, 2015. Accordingly, the Court directed the plaintiffs "to file proof-of-service affidavits regarding their service on the named defendants by no later than March 16, 2015." *Id.* The plaintiffs filed affidavits regarding Mr. Holder and Mr. Donahoe on March 16, 2015. *See* Holder Service Aff., ECF No. 15; Donahoe Service Aff., ECF No. 16.

The following day, the Court denied plaintiffs' first motion for expedited discovery without prejudice. *See* Minute Order of March 17, 2015. For one, the Court found, "[p]laintiffs have not filed proof of service on the other individuals and entities required by Federal Rule of Civil Procedure 4(i)(1) and 4(i)(3)." *Id.* "For that reason alone . . . it would be premature to begin any expedited discovery." *Id.* The Court also found that plaintiffs' request for expedited discovery was "overbroad":

6

> [G]ood-cause to conduct "Doe Defendant" discovery must be tied to the particular limited discovery the plaintiff seeks (i.e. the plaintiff must show good cause for service of particular requests or discovery limited to particular specified topics). For example, a Complaint suing a Doe Defendant law-enforcement officer for alleged assault might seek to utilize information that is known about that officer, such as a unit to which the officer was assigned or the date and time of the incident, to form the basis for specific discovery requests targeted only at learning that officer's identity. *Cf. Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997). In the case of copyright-infringement lawsuits involving Doe Defendants, expedited discovery to learn the identity of the alleged copyright infringer often takes the form of narrow requests to the Internet Service Provider affiliated with the Internet Protocol address that did the alleged infringing. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 14-129, 2014 WL 2206397, at *2-3 (D.D.C. May 28, 2014). In this case, aside from a conclusory statement that the plaintiffs seek "to serve limited, immediate discovery . . . to determine the true [identities] of the Doe Defendants," the Court has been provided no explanation of precisely what discovery plaintiffs seek to take. Nor is it clear from the Complaint what such limited discovery might look like. In the absence of an explanation of what discovery the plaintiffs seek to take, the Court cannot consider whether they have demonstrated good cause to support that discovery.

*Id.* (alterations in original). The Court specifically stated that if the plaintiffs sought to renew their motions:

> [T]hey must: (1) first file proof that the named defendants in this case have been properly served pursuant to Federal Rule of Civil Procedure 4(i); and (2) provide an explanation of the precise discovery they seek to take, including an explanation of how that discovery would be limited to ensure that it did not become full discovery on the merits of their claims, along with an explanation of how the good cause they seek to show supports the taking of that specific discovery.

*Id.*

7

After submitting additional service affidavits, plaintiffs filed a renewed motion for expedited discovery on March 20, 2015. *See* Second Mot. for Expedited Disc. ("Mot."), ECF No. 21. Attached to this motion were the interrogatories and document requests that the plaintiffs seek leave to serve. *See* Ex. A to Mot., ECF No. 21-1. On April 6, 2015, defendants Holder and Donahoe filed a motion to dismiss, combined with an opposition to the motion for expedited discovery. *See* Mot. to Dismiss/Opp. to Mot. ("Opp."), ECF No. 23. Plaintiffs filed a reply brief in further support of their second motion for expedited discovery on April 23, 2015. *See* Reply, ECF No. 28. Although plaintiffs opposed the pending motion to dismiss that same day, they submitted an Amended Complaint one week later. *See* First Am. Compl., ECF No. 30.[2] Accordingly, the Court denied the motion to dismiss as moot. *See* Minute Order of May 15, 2015. The named defendants' response to the First Amended Complaint is currently due on July 7, 2015. *See* Minute Order of June 24, 2015. The motion for expedited discovery, however, is ripe for resolution.[3]

---

[2] The Amended Complaint—like the original Complaint—describes the Doe defendants only vaguely. *See id.* ¶ 9 ("Plaintiffs are informed and believe, and on that basis allege, that these Defendants, and each of them, are in some manner responsible and liable for the acts and/or damages alleged in the Complaint.").

[3] The Court briefly addresses two of the defendants' arguments. First, the defendants assert that the plaintiffs have failed properly to serve them in accordance with the Federal Rules of Civil Procedure. *See* Opp. at 6–8. Because the Court denies the

8

## II. Applicable Law

"As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery . . . to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Landwehr v. FDIC*, 282

---

motion for expedited discovery on other grounds, it need not reach the service-of-process question at this time. Second, the defendants ask the Court to deny the second motion for expedited discovery for failure to comply with Local Civil Rule 7(m), which requires that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement" and that the movant "shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." Mr. Holder and Mr. Donahoe contend that the plaintiffs neither included the required statement in their motion nor actually conferred with them. *See* Opp. at 4–6. The plaintiffs assert that the defendants informed them much earlier that they would not "consent to discovery before a Motion to Dismiss was pursued," which they claim "effectively ended the matter and no further conversations to pursuant to any meet and confer requirement under Local Rule 7(m) seemed necessary." Reply at 4. Plaintiffs continue that "it never occurred to Plaintiffs' Counsel to yet again contact Defense Counsel." *Id.* The Court agrees with the defendants that plaintiffs' failure to comply with Local Rule 7(m) provides an independent basis for denial of the motion. *See Cohen v. Board of Trustees of Univ. of D.C.*, No. 14-754, 2014 WL 6890705, at *4 (D.D.C. Dec. 9, 2014); *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006). Plaintiffs' apparent belief that because the defendants had previously expressed a position on the issue, they were somehow exempt from Local Civil Rule 7(m) is simply incorrect. The meet-and-confer requirement serves not only to obtain the opposing party's potential consent to a motion, but also to provide an opportunity for the parties to narrow or clarify the scope of their dispute.

9

F.R.D. 1, 3 (D.D.C. 2010) (quotation marks omitted). Courts should deny motions for expedited discovery when it is "clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *accord Newdow v. Roberts*, 603 F.3d 1002, 1010-11 (D.C. Cir. 2010) (citing favorably to *Gillespie* and denying a motion for expedited discovery to identify Doe defendants when "[n]o amount of discovery will uncover the identities of the unnamed defendants."). "Plaintiffs lacking necessary information about unidentified defendants must seek such information through third-party subpoenas or other third-party discovery, rather than by naming the organizations who possess the desired documents as defendants themselves in an apparent attempt to compel disclosure." *Butera & Andrews v. IBM Corp.*, 456 F. Supp. 2d 104, 114 (D.D.C. 2006).

Two different standards have previously been applied when evaluating motions for expedited discovery: the *Notaro* test and the reasonableness, or good-cause, standard. *See, e.g.*, *Landwehr* 282 F.R.D. at 3-4. Recently, however, other Judges of this Court have rejected entirely the *Notaro* test in favor of the good-cause standard, which is "more suited to the application of the Court's broad discretion in handling discovery." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014); *True the Vote,*

*Inc. v. IRS*, No. 13-734, 2014 WL 4347197, at *7 (D.D.C. Aug. 7, 2014). The Court agrees that the good-cause standard is more appropriate.

Courts typically consider five factors when evaluating a motion for expedited discovery under the good-cause standard: "'(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Guttenberg*, 26 F. Supp. 3d at 98 (quoting *In re Fannie Mae Derivative Litigation*, 227 F.R.D. 142, 142-43 (D.D.C. 2005)). Courts are not limited to these factors, but the factors provide "guidelines for the exercise of the Court's discretion." *Id.*

**III. Analysis**

Factors two through five weigh strongly in favor of denying the motion for expedited discovery. The first factor is inapplicable because a motion for a preliminary injunction is not pending. Second, plaintiffs' proposed discovery requests are not narrowly tailored to discovering the identity of Doe defendants and instead seek significant discovery on the merits. Third, the plaintiffs do not sufficiently allege that irreparable harm will occur if the motion is denied. Fourth, because of the breadth of the discovery requests, the burden of

11

complying with them would be heavy. Finally, this motion comes far in advance of normal discovery, as the defendants have not yet responded to the Amended Complaint.

### A. The Proposed Discovery Requests are not Narrowly Tailored to Discovering the Identity of the Doe Defendants.

In considering a motion for expedited discovery, a court inquires into the breadth of the proposed discovery requests. *See Guttenberg*, 26 F. Supp. 3d at 98. Any requested discovery must be limited in scope to requesting specific records or information about identities of Doe defendants. For instance, when a Doe defendant in a copyright-infringement case has been identified by the alleged use of a particular Internet Protocol ("IP") address at a specific date and time, the plaintiff may seek limited discovery to identify the user of that IP address. *See, e.g.*, *Malibu Media, LLC v. Doe*, 45 F. Supp. 3d 106, 109–10 (D.D.C. 2014). In another common situation, a plaintiff alleging civil-rights violations by law-enforcement officers may be unable to identify the officers precisely, but may use other *specific* information known about the officers to tailor discovery requests to uncovering their full identity. *See, e.g.*, *Valentin v. Dinkins*, 121 F.3d 72, 73–74 (2d Cir. 1997) (*pro se* plaintiff knew the defendant's last name, the date and precise location of the incident, the precinct at which he was later held, and the criminal case number associated with the arrest).

12

The thread running through these cases is that the plaintiffs had some reasonable method of learning the identity of the individuals alleged to have committed a particular tort, by virtue of the plaintiff's knowledge of certain unique characteristics of the alleged tortfeasor (e.g., their IP address, their badge number, or the fact that they were working a particular shift in a particular location). By contrast, when a plaintiff's discovery requests "would go to the heart of th[e] case," such that they become discovery that seeks to prove an element of the plaintiffs' case, a request for expedited discovery is inappropriate. *Guttenberg*, 26 F. Supp. 3d at 98.

Plaintiffs argue that their proposed interrogatories and document requests are "narrowly tailored to the unique identification issue . . . to ascertain the identity of certain agents, employees, and contractors of the federal government involved in the unauthorized and illegal surveillance." Mot. at 5. Mr. Holder and Mr. Donahoe respond that first, the number of proposed interrogatories far exceeds the maximum number of 25 provided for under Federal Rule of Civil Procedure 33 because there are 53 discrete subparts to the interrogatories. *See* Opp. at 9. Furthermore, the interrogatories seek overbroad information on identities of "any person" or "all persons" with knowledge of broad categories of information, seek the identification of individuals throughout the entire federal

13

government, seek discovery on the merits of plaintiffs' claims that the alleged intrusions and surveillance took place, and seek to test theories regarding the involvement of the White House that are not even mentioned in the Complaint. *See id.* at 9-10. The problem with plaintiffs' proposed discovery stems from their allegations: That someone (or some group of individuals) accessed their electronics in various ways over a long period of time. Other than the single IP address allegedly linked to the U.S. Postal Service, there is little information from which plaintiffs could even begin to identify who participated directly in the alleged misconduct.

Except for Question 11, plaintiffs' proposed interrogatories are not limited or narrowly tailored to the identification of any Doe defendant:

- Interrogatories 2-10 & 16 require the identification "of any person who has knowledge" of particular information. These requests broadly seek the identification not only of government officials, but any other person.
    - Relatedly, interrogatories 4-10 ask for the identification of individuals with knowledge of the existence of various technologies, untethered from any knowledge regarding the factual allegations raised in this case.
- Interrogatories 1 & 12-16 require the defendants to survey broadly "all persons employed by any agency of the federal government" for responsive information.
- Interrogatories 17-21 and all three document requests seek merits discovery, by phrasing their identification-related questions in a manner that would require the defendant to provide answers regarding the substance of plaintiffs'

14

allegations. In so doing, these interrogatories fail to comply with the Court's March 17, 2015 Minute Order, which cautioned the plaintiffs against seeking "full discovery on the merits of their claims" in any expedited discovery proceeding.

- Document Request No. 3 seeks to obtain information regarding the White House, despite the complete lack of allegations in the Complaint regarding the White House or any White House involvement in the matters that are the subject of this case.

Interrogatory 11, if properly propounded, *may* present the type of information that can be a proper subject of a third-party subpoena. Plaintiffs have identified an IP address allegedly used in the intrusion of their computers, and could potentially seek limited information to identify the user of this IP address. *See, e.g.*, *Malibu Media*, 45 F. Supp. 3d at 109–10.

Because plaintiffs are effectively asking the Court to allow them to conduct merits discovery—i.e. discovery that seeks to establish the truth of their allegations and to identify a broad range of individuals with knowledge not limited to the particular individuals plaintiffs intend to sue—the Court finds that the proposed discovery is not at all narrowly tailored to discovering the identity of Doe defendants. Thus, this factor supports denying the motion for expedited discovery.[4]

---

[4] The Court is sympathetic to plaintiffs' situation: They allege harm caused by United States government agents, but lack the information necessary to identify those agents, or even to tailor discovery requests to uncovering the identity of those agents. The solution, however, is not to sue high-level officials and seek to take expedited discovery from their

15

**B.   Plaintiffs Do Not Show An Urgent Need for Discovery.**

In considering whether good cause exists to grant a motion for expedited discovery, the Court also assesses the purpose of the motion. When the plaintiff will be irreparably harmed without

---

employers. Judge Walton's decision in *Butera & Andrews v. Int'l Bus. Machines Corp.*, 456 F. Supp. 2d 104 (D.D.C. 2006) illustrates why. In *Butera*, the plaintiff "became aware of certain facts suggesting that its e-mail server had been compromised by unauthorized parties" and hired an investigator who "revealed that unauthorized personnel had penetrated the plaintiffs' e-mail server and left a series of instructions which permitted computer hackers to enter the system surreptitiously and download documents from the server." *Id.* at 106 (quotation marks and alterations omitted). The plaintiff ultimately linked the activity to a specific IP address, affiliated with an IBM facility "on Cornwallis Road in Durham, North Carolina." *Id.* The plaintiff then sued IBM and a "Doe" defendant, alleging that the Doe defendant had conducted the attack, but not alleging that "IBM orchestrated, authorized, or was otherwise aware of these attacks." *Id.* at 107. The plaintiff sought expedited discovery from IBM targeted at uncovering various information to "either confirm IBM's claims of complete innocence or implicate them in procedures and knowledge which they are understandably reluctant to reveal" and also to "include (or exclude) IBM personnel or agents from participation in the attacks and demonstrate whether these persons were acting on behalf of IBM and in furtherance of their employment." *Id.* at 113–14 (quotation marks and alteration omitted). This expedited discovery, however, was not appropriate: "Plaintiffs lacking necessary information about unidentified defendants must seek such information through third-party subpoenas or other third-party discovery, rather than by naming the organizations who possess the desired documents as defendants themselves in an apparent attempt to compel disclosure." *Id.* at 114; *see also id.* ("[f]undamental fairness commands that '[c]ounsel should not be allowed to file a complaint first and thereafter endeavor to develop a cause of action'") (quoting *Weil v. Markowitz*, 108 F.R.D. 113, 116 (D.D.C. 1985)). To the extent that plaintiffs intend to use the presence of government officials in this case to obtain discovery directly from government agencies, they have proceeded in a similarly misguided manner.

16

expedited discovery, this factor weighs in favor of granting a motion for expedited discovery. *True the Vote*, 2014 WL 4347197, at *8. In addition, this factor supports a motion for expedited discovery when the plaintiff seeks to "gain evidence to get the court to preserve the status quo." *Disability Rights Council of Greater Wash. v. Wash. Metro Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006). If there is no urgency in conducting discovery, however, this factor weighs against granting expedited discovery. *Guttenberg*, 26 F. Supp. 3d at 98.

Plaintiffs believe that irreparable injury would occur if expedited discovery is not granted because they will not be able to "serve all necessary parties within 120 days of filing suit and within the applicable statute of limitations." Mot. at 5. Plaintiffs, however, provided no explanation of the statute of limitations they may be facing, or the effect, if any, of suing Doe defendants on that statute of limitations. And the plaintiffs' concern about their inability to serve Doe defendants within 120 days of filing the notice of removal is mitigated because this Court has discretion to extend the deadline for completing service of process upon a showing of good cause. *See Landwehr*, 282 F.R.D. at 5 (noting that "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable

discovery," but that the plaintiffs in that case failed timely to serve the defendants not because of "the absence of discovery, but instead, [due to] the absence of any specific allegations of wrongdoing by any such individuals"); Fed. R. Civ. P. 4(m). Accordingly, this factor weighs against allowing expedited discovery.

### C. The Burden of Complying with the Proposed Discovery Requests Would Be Heavy.

The fourth factor that the Court examines in considering a motion to for expedited discovery is the burden for the defendants to comply with the proposed discovery. When the burden is low, such as responding to only one or a few discovery requests, then this factor supports granting the motion for expedited discovery. *See Humane Soc'y v. Amazon.com, Inc.*, No. 07-623, 2007 WL 1297170, at *3 (D.D.C. May 1, 2007). By contrast, when the defendants would have to "expend[] a huge amount of resources" to comply with expedited discovery, the factor supports denying the motion for expedited discovery. *True the Vote*, 2014 WL 4347197, at *8. Here, the burden on Mr. Holder and Mr. Donahoe to comply with the proposed interrogatories and document production requests would be heavy. The proposed interrogatories are overly broad and would require significant time and resources to address. The burden is even greater as there are more discrete subparts to the proposed interrogatories

18

than the maximum of 25 allowed for merits discovery under Federal Rule of Civil Procedure 33(a)(1). Consequently, this factor weighs against granting the motion for expedited discovery.

### D. Ms. Attkisson's Motion for Expedited Discovery Comes Well in Advance of Typical Discovery.

Courts also consider the timing of the motion for expedited discovery, in particular how long before the normal discovery process the motion comes. Because discovery typically occurs after the resolution of motions to dismiss, *True the Vote*, 2014 WL 4347197, at *8, presenting a motion for expedited discovery prior to rulings on motions to dismiss is often disfavored. *Guttenberg*, 26 F. Supp. 3d at 99 ("[M]ost important for the Court's reasonableness analysis is the pendency of the defendants' motion to dismiss."). Even filing a motion for expedited discovery after briefing of motions to dismiss has concluded is "well in advance of typical discovery." *Landwehr*, 282 F.R.D. at 4.

Relatedly, requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim could "force[] [the defendants] to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Guttenberg*, 26 F. Supp. 3d at 99. "At the very least,

19

reasonableness dictates that the Court consider defendants' motion to dismiss before requiring extensive and expensive discovery." *Id.* In this case, the request for expedited discovery comes well in advance of typical discovery as the parties appear still to dispute even whether the plaintiffs have properly served the defendants that they did name, and, in any event, the named defendants appear to intend to renew their motion to dismiss.

**IV. Conclusion**

For the foregoing reasons, Ms. Attkisson's motion for expedited discovery is **DENIED**.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            July 3, 2015**