**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| SHARYL THOMPSON ATTKISSON, ) | |
| *et al.*, ) | |
| ) | |
|         Plaintiffs, ) | |
| ) | |
|       v. ) | Civil Action No. 15-238 (EGS) |
| ) | |
| ERIC HOLDER, *et al.*, ) | |
| ) | |
|         Defendants. ) | |
| _____) | |
| ) | |
| SHARYL THOMPSON ATTKISSON, ) | |
| *et al.*, ) | |
| ) | |
|         Plaintiffs, ) | |
| ) | |
|       v. ) | Civil Action No. 15-1437 (EGS) |
| ) | |
| ERIC HOLDER, *et al.*, ) | |
| ) | |
|         Defendants. ) | |
| _____) | |

**MEMORANDUM OPINION**

Sharyl Attkisson is an investigative reporter who lives in Leesburg, Virginia with her husband, James Attkisson, and their daughter, Sarah Attkisson. While employed as a reporter for CBS News, Ms. Attkisson reported on numerous hot-button and controversial subjects, like the attack on the American diplomatic mission in Benghazi, Libya, that involved Executive Branch officials. During the period when Ms. Attkisson was conducting these investigations and issuing the resulting news reports, the Attkissons began to notice anomalous activity

1

related to electronic devices, like computers, mobile phones, and televisions, occurring in their Virginia home. Subsequent computer forensic analysis indicated a sophisticated scheme of electronic infiltration and surveillance related to their electronic devices. The Attkissons contend that this electronic infiltration and surveillance was carried out by members of the United States government in response to Ms. Attkisson's news reporting activity, and, accordingly, they have asserted various claims against the United States and against former Attorney General Eric Holder, former Postmaster General Patrick Donahoe, and unknown agents of the Department of Justice, the United States Postal Service, and the United States. Their claims include Federal Tort Claims Act ("FTCA") claims against the United States and claims against the individual federal officers for violations of constitutional rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Defendants have moved to dismiss the claims against them for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Upon consideration of that motion, the response and reply thereto, the applicable law, and for the reasons discussed below, defendants' motion is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**. This consolidated case will be **TRANSFERRED** in its entirety to the Eastern District of Virginia.

## I.    Background

As an investigative reporter for CBS News, Ms. Attkisson was responsible for investigating and reporting on national news stories. Compl., ECF No. 4 ¶ 14.[1] Between 2011 and 2013, she investigated and prepared various high-profile news reports, including ones related to the "Fast and Furious" "gunwalking" operation and the attack on the American diplomatic mission in Benghazi, Libya. *Id.* ¶¶ 5, 14-15, 17-22, 24, 34-35, 57. During that time, Ms. Attkisson lived in Leesburg, Virginia with her husband, James, and their daughter, Sarah. *Id.* ¶¶ 5-7.

In 2011──at the same time that Ms. Attkisson was conducting investigations and issuing certain of her high-profile news reports──the Attkissons "began to notice anomalies in numerous electronic devices at their home in Virginia." *Id.* ¶ 23. These anomalies included Ms. Attkisson's work-issued laptop computer and a family desktop computer "turning on and off at night without input from anyone in the household," "the house alarm chirping daily at different times," and "television problems, including interference." *Id.* All of these electronic devices used "the Verizon FiOS line installed in [the Attkissons'] home," but Verizon was unable to stanch the anomalous activity

---

[1] This Opinion in this consolidated case cites to the complaint filed in Civil Action No. 15-1437. The allegations in that complaint are nearly identical to those made in the complaint filed in Civil Action No. 15-238.

despite multiple attempts. *Id.* In January 2012, the Attkissons'
residential internet service "began constantly dropping off."
*Id.* ¶ 25.

In February 2012, "sophisticated surveillance spyware" was
installed on Ms. Attkisson's work-issued laptop computer. *Id.* ¶
27. A later forensic computer analysis revealed that Ms.
Attkisson's laptop and the family's desktop computer had been
the "targets of unauthorized surveillance efforts." *Id.* That
same forensic analysis revealed that Ms. Attkisson's mobile
phone was also targeted for surveillance when it was connected
to the family's desktop computer. *Id.* The infiltration of that
computer and the extraction of information from it was "executed
via an IP address owned, controlled, and operated by the United
States Postal service." *Id.* Additionally, based on the
sophisticated nature of the software used to carry out the
infiltration and software fingerprints indicating the use of the
federal government's proprietary software, the infiltration and
surveillance appeared to be perpetrated by persons in the
federal government. *See id.* ¶¶ 47-48. An independent forensic
computer analyst hired by CBS subsequently reported finding
evidence on both Ms. Attkisson's work-issued laptop computer and
her family's desktop computer of "a coordinated, highly-skilled
series of actions and attacks directed at the operation of the
computers." *Id.* ¶ 49. Computer forensic analysis also indicated

that remote actions were taken in December 2012 to remove the evidence of the electronic infiltration and surveillance from Ms. Attkisson's computers and other home electronic equipment. *Id.* ¶ 42.

As Ms. Attkisson's investigations and reporting continued, in October 2012 the Attkissons noticed "an escalation of electronic problems at their personal residence, including interference in home and mobile phone lines, computer interference, and television interference." *Id.* ¶ 37. In November of that year, Ms. Attkisson's mobile phones "experienced regular interruptions and interference, making telephone communications unreliable, and, at times, virtually impossible." *Id.* ¶ 40. Additionally, in December 2012, a person with government intelligence experience conducted an inspection of the exterior of the Attkissons' Virginia home. *Id.* ¶ 43. That investigator discovered an extra Verizon FiOS fiber optics line. *Id.* Soon thereafter, after a Verizon technician was instructed by Ms. Attkisson to leave the extra cable at the home, the cable disappeared, and the Attkissons were unable to determine what happened to it. *Id.* ¶¶ 43-45. In March 2013, the Attkissons' desktop computer malfunctioned, and in September of that year, while Ms. Attkisson was working on a story at her home, she observed that her personal laptop computer was remotely accessed

and controlled, resulting in data being deleted from it. *Id.* ¶¶ 50, 57.

On April 3, 2013, Ms. Attkisson filed a complaint with the Inspector General of the Department of Justice. *Id.* ¶ 51. The Inspector General's investigation was limited to an analysis of the compromised desktop computer, and the partially-released report that emerged from that investigation reported "no evidence of intrusion," although it did note "a great deal of advanced mode computer activity not attributable to Ms. Attkisson or anybody in her household." *Id.* ¶ 60.

The Attkissons allege that the "cyber-attacks" they "suffered in [their] home" were perpetrated by "personnel working on behalf of the United States." *Id.* ¶¶ 66-67. Accordingly, they have asserted various claims against the United States and against former Attorney General Eric Holder, former Postmaster General Patrick Donahoe, and unknown agents of the Department of Justice, the United States Postal Service, and the United States, all in their individual capacities. Those claims include claims against the United States under the FTCA and claims against the individual federal officers for violations of constitutional rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Because the Attkissons initiated two lawsuits with nearly identical factual allegations and legal claims, the Court

consolidated the actions. *See* Minute Entry of July 28, 2016.

Pursuant to that consolidation, the Court denied various pending

motions related to third-party discovery aimed at identifying

the unnamed "Doe" defendants. *See id.* The Attkissons have

subsequently filed a motion for reconsideration concerning the

Order denying those third-party discovery-related motions, *see*

Pls.' Mot. for Recons., ECF No. 67, which defendants have

opposed. *See* Defs.' Opp. to Pls.' Mot. for Recons., ECF No. 69.

Defendants have also moved to dismiss this consolidated case for

lack of subject matter jurisdiction, improper venue, and failure

to state a claim for which relief can be granted. *See* Defs.' Am.

Mot. to Dismiss, ECF No. 74.[2] That amended motion to dismiss is

now ripe and ready for the Court's adjudication.

## II.  Analysis

"[A] federal court has leeway to choose among threshold

grounds for denying audience to a case on the merits." *Sinochem*

*Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431

(2007) (internal quotation marks omitted). Thus, "certain non-

merits, nonjurisdictional issues may be addressed preliminarily,

because '[j]urisdiction is vital only if the court proposes to

_____

[2] Defendants were directed to shorten the length of and refile an
earlier-filed motion to dismiss. *See* Minute Entry of Aug. 31,
2016. That earlier-filed motion to dismiss is hereby **DENIED
WITHOUT PREJUDICE.** The Court limits its analysis to the
subsequently filed amended motion to dismiss.

issue a judgment on the merits.'" *Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (alteration in original) (quoting *id.*). Accordingly, it is appropriate for this Court——consistent with the practice of other courts in this District——to rule on defendants' assertion of improper venue before addressing their challenges to subject matter jurisdiction. *See Yuanxing Liu v. Lynch*, No. 14-1516, 2015 WL 9281580, at *2 (D.D.C. Dec. 8, 2015) ("This court . . . is within its discretion to rule on Defendants' assertion of improper venue before addressing their challenge to subject matter jurisdiction."); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) ("Adjudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists.").

In ruling on a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the Court must accept all well-pled factual allegations as true and must draw all reasonable inferences in favor of the plaintiff, but the Court is not required to accept as true plaintiff's legal conclusions regarding venue. *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002). The Court also need not accept as true inferences that are unsupported by the facts set out in the complaint. *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17 (D.D.C. 2013) (citing *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir.

2006)). Further, "[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (internal quotation marks omitted). But to prevail on a motion to dismiss for improper venue, a defendant must present facts sufficient to defeat a plaintiff's assertion of venue. *Darby*, 231 F. Supp. 2d at 277.

Here, the Attkissons assert various claims under the FTCA. *See* Compl., ECF No. 4 ¶ 1. The FTCA has a special venue provision that provides that FTCA claims "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Defendants argue that venue is improper in the District of Columbia as to the FTCA claims because the plaintiffs reside in Virginia and the acts on which their claims are based occurred in Virginia. Defs.' Am. Mem. in Supp. of Mot. to Dismiss, ECF No. 74-1 at 15-16. Accordingly, defendants argue, the FTCA claims should be dismissed or, in the alternative, transferred to the Eastern District of Virginia. *Id.* at 18 & n.9. The Attkissons, in turn, acknowledge that they do not reside in the District of Columbia, but they argue that a substantial amount of activity giving rise to their FTCA claims occurred in the District of Columbia, making venue as to those

claims proper here. Pls.' Opp., ECF No. 77 at 18. According to
the Attkissons, the relevant activity included Ms. Attkisson's
reporting, "all of which was carried out" in the District of
Columbia; defendants' response to that reporting——originating
from their headquarters in the District of Columbia——to use
electronic means to identify and silence confidential sources
and to infiltrate the Attkissons' electronic devices to extract
information; and the problems that the Attkissons experienced
with electronic devices, including mobile phones and laptop
computers, that "were transported daily to and from the District
of Columbia." *Id.* at 18-19.

Venue is proper for FTCA claims in the district where
"sufficient activities giving rise to the plaintiff's cause of
action took place." *Franz v. United States*, 591 F. Supp. 374,
378 (D.D.C. 1984). "Further, when conduct occurs in one district
but has intended effects in another, 'the act 'occurs' in the
jurisdiction where its effects are directed.'" *Sanchez v. United
States*, 600 F. Supp. 2d 19, 21 (D.D.C. 2009) (quoting *Reuber v.
United States*, 750 F.2d 1039, 1047 (D.C. Cir. 1984), *rev'd on
other grounds*, *Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223
(D.C. Cir. 1994)). Under this standard, venue is proper as to
Attkissons' FTCA claims in the Eastern District of Virginia and
improper in the District of Columbia.

That Ms. Attkisson did her reporting in the District of
Columbia is of little moment in the FTCA venue analysis, as that
journalistic activity is alleged as the motivation for the
tortious electronic infiltration and surveillance activities but
was not itself part of the "activities giving rise to the
[Attkissons'] cause of action." *See Franz*, 591 F. Supp. at 378.
Instead, the relevant activities actually giving rise to the
FTCA claims——*i.e.*, "the act[s] . . . complained of," 28 U.S.C. §
1402(b)——are the electronic infiltration and surveillance in
which the defendants allegedly engaged and which resulted in the
Attkissons experiencing problems with their electronic devices.
*See* Pls.' Opp., ECF No. 77 at 19. But even if defendants'
electronic infiltration and surveillance targeting the
Attkissons' electronic devices originated in or was directed
from defendants' "headquarters in the District of Columbia,"
*id.*, "the mere involvement on the part of federal agencies, or
some federal officials who are located in Washington D.C. is not
determinative of the question of venue." *Patel v. Phillips*, 933
F. Supp. 2d 153, 165 (D.D.C. 2013) (internal quotation marks
omitted). Instead, "[w]hen conduct 'occurs in one district but
has intended effects elsewhere, the act 'occurs' in the
jurisdiction where its effects are directed.'" *Id.* (quoting
*Reuber*, 750 F.2d at 1047). Accepting all of the Attkissons'
allegations as true and drawing all reasonable inferences in

their favor, *see Darby*, 231 F. Supp. 2d at 276, the effects of defendants' conduct can only be said to have been directed at the Attkissons' home in Virginia and not directed at the District of Columbia.

The Attkissons assert in their opposition brief that their electronic "devices were transported daily to and from the District of Columbia, and given that the software used to infiltrate the mobile devices was contained within the software wherever the devices traveled, the infiltration occurred in both Virginia and the District of Columbia." Pls.' Opp., ECF No. 77 at 19. But their complaint is entirely devoid of any reference to their electronic devices moving between the District of Columbia and Virginia, and "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomas v. Sotera Def. Sols., Inc.*, 40 F. Supp. 3d 181, 185 (D.D.C. 2014) (internal quotation marks omitted). In any event, even if the Attkissons' opposition brief could be used to amend their complaint to allege that their electronic devices moved regularly between the District of Columbia and Virginia, the Attkissons explicitly limit the effects of defendants' tortious "cyber-attacks" to those harms related to their electronic devices that they "suffered in [their] *home*." Compl., ECF No. 4 ¶ 66 (emphasis added). Thus, repeatedly in their complaint, the Attkissons allege anomalous activity related to

12

their electronic devices occurring in their Virginia home
without once alleging similar anomalous activity occurring in
the District of Columbia. *See id.* ¶ 23 ("In mid-to-late 2011,
[the Attkissons] began to notice anomalies in numerous
electronic devices at their home in Virginia. . . . All of the
referenced devices use the Verizon FiOS line installed in Ms.
Attkisson's home."), ¶ 25 ("In January, 2012, Ms. Attkisson
contacted Verizon about ongoing internet problems and
intermittent connectivity because the residential internet
service began constantly dropping off."), ¶ 27 ("The forensic
analysis likewise revealed direct targeting of Plaintiffs'
Blackberry mobile phone when connected to the [desktop
computer]."), ¶ 37 ("In the later part of October 2012, [the
Attkissons] began noticing an escalation of electronic problems
at their personal residence, including interference in home and
mobile phone lines, computer interference, and television
interference."), ¶ 43 ("In December, 2012, a contact with U.S.
government intelligence experience conducted an inspection of
Ms. Attkisson's exterior home."), ¶ 57 ("In September, 2013,
while Ms. Attkisson continued working on the *Benghazi* story at
her home in the evening, she observed for the first time that a
third computer, her personal MacBook Air, was accessed remotely,
controlled, and the data deleted."). To the extent that the
Attkissons' complaint could be read very liberally to allege

13

anomalous activity associated with their electronic devices occurring away from their Virginia home and in the District of Columbia, *see id.* ¶ 40 ("[Ms. Attkisson's] mobile phones also experienced regular interruptions and interference . . . ."), those allegations are "insubstantial in relation to the totality of events giving rise to [the Attkissons'] grievance." *See Franz*, 591 F. Supp. at 378 (internal quotation marks omitted); *see also Sanchez*, 600 F. Supp. 2d at 23 (finding venue improper in the District of Columbia as to FTCA claims when the "gravamen" of the acts or omissions complained of occurred outside the District of Columbia). Accordingly, because almost all—if not all—of the effects of defendants' alleged tortious electronic infiltration and surveillance fell upon the Attkissons in Virginia, venue as to the FTCA claims is proper there and improper here.

Defendants do not challenge the Attkissons' other, non-FTCA claims on improper venue grounds, and the Court assumes venue is proper in this Court as to those claims. Pursuant to the doctrine of pendent venue, "federal courts may exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued *and* the interests of judicial economy are furthered by hearing the claims together." *Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009).

14

"However, that doctrine does not apply where, as here, the improperly venued claims are subject to a specific venue statute." *Yuanxing Liu*, 2015 WL 9281580, at *3 (citing *id.*). Relying on the pendent venue doctrine where a specific venue provision is applicable is inappropriate because doing so would contravene Congress's clear intent to limit the districts in which certain claims may be heard. *See Sierra Club*, 623 F. Supp. 2d at 38; *Boggs v. United States*, 987 F. Supp. 11, 18-19 (D.D.C. 1997) (refusing to use the pendent venue doctrine in the context of a FTCA claim because doing so would "place this court in the position of circumventing otherwise clear congressional intent as to where FTCA claims are to be heard"). Accordingly, the Court will not exercise its discretion to apply the pendent venue doctrine as to the FTCA claims here.

Having determined that venue is improper as to the Attkissons' FTCA claims and that the pendent venue doctrine is inapplicable, the Court may either "dismiss, or if it be in the interest of justice, transfer [this] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court," *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983), but the "standard remedy for improper venue is to transfer the case to the proper court

rather than dismissing it——thus preserving a [plaintiff's] ability to obtain review." *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001). The Court will use that standard remedy here and find that the interest of justice warrants transfer rather than dismissal so that the Attkissons' claims can be adjudicated on the merits. And although it appears that the Attkissons' non-FTCA claims are properly venued in the District of Columbia, the Court will transfer the entirety of this consolidated case to the Eastern District of Virginia "to ensure that the claims are all heard together in the interest of preserving judicial and party resources." *See Yuanxing Liu*, 2015 WL 9281580, at *3; *Coltrane v. Lappin*, 885 F. Supp. 2d 228, 237 (D.D.C. 2012) (noting that it is "common in this Circuit" to transfer the entirety of the case when some but not all claims are improperly venued here); *see also Ashbourne v. Geithner*, Nos. 11-2818, 11-3199, 11-3456, 2012 WL 2874012, at *5 (D. Md. July 12, 2012) (transferring the entirety of a consolidated case when venue was improper as to only certain claims to "avoid piecemeal litigation").

## III. Conclusion

For the reasons stated above, defendants' amended motion to dismiss is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**. As to their assertion that the Attkissons' FTCA claims are improperly venued, defendants' motion is granted. Accordingly,

this consolidated case shall be transferred in its entirety to the United States District Court for the Eastern District of Virginia. The remainder of defendants' amended motion to dismiss is denied without prejudice so that defendants may refile it, if appropriate, upon transfer to the Eastern District of Virginia. Likewise, the Attkissons' motion for reconsideration of the Order denying various motions related to third-party discovery is **DENIED WITHOUT PREJUDICE** so that it may be refiled in and more appropriately resolved by the transferee court. An appropriate Order accompanies this Memorandum Opinion.

    **SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
             **United States District Judge**
             **March 19, 2017**